[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20, 2006
THOMAS K. KAHN
CLERK

-----------------------------------------
No. 05-12954
Non-Argument Calendar
-----------------------------------------

D.C. Docket  No. 03-03052-CV-HS-NE

SYLVIA VAUGHN,
as Administratrix of the Estate of Anthony Ryan McLemore,

Plaintiff-Appellant,

versus

ATHENS, CITY OF, a municipal Corporation,
WAYNE HARPER, individually and as Chief of Police
of the City of Athens,
TRACY HARRISON,
TREVOR HARRIS,
individually and as police officers of the City of Athens,
JOHN DAVID BROWN,

Defendants-Appellees.

-------------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Alabama
-------------------------------------------------------------------

(April 20, 2006)

Before EDMONDSON, Chief Judge, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Sylvia Vaughn, as Administratrix of the Estate of Anthony Ryan McLemore, appeals the district court's orders dismissing this action, which alleged violations of 42 U.S.C. § 1983 and Alabama state law, against the City of Athens, Alabama, City of Athens Chief of Police Wayne Harper, and City of Athens Police Officers Tracy Harrison and Trevor Harris, arising out of the murder of McLemore by a drug dealer. No reversible error has been shown; we affirm.

According to the complaint, on 18 August 2002, Harris and Harrison arrested McLemore on felony drug possession charges and placed him in the Athens City jail. McLemore was on probation when arrested, and the arrest violated the terms of his probation. McLemore's parole officer, Bruce Graham, was notified of the arrest and placed a hold on McLemore, "meaning he should not be released from jail because of the terms of parole."

Harris and Harrison "worked out an agreement" with McLemore: he agreed to "set up" a drug dealer, John David Brown, in exchange for "leniency or not being charged." McLemore had assisted the Athens Police Department before on drug cases "in exchange for consideration." With Harris and Harrison's approval,

McLemore was released from jail on his own recognizance without having to post bond. Graham did not give the Athens Police Department permission to release McLemore. Harris and Harrison sent McLemore to set up a buy from Brown. Harris and Harrison had been warned that Brown would kill McLemore "for trying to set him up for criminal prosecution." The officers ignored the warnings and sent McLemore with no arrangements for his protection. On 20 August 2002, Brown killed McLemore "for trying to set him up."

Plaintiff stated that McLemore would be alive if Defendants "had heeded the warnings and never released him" and "had followed proper protocol." The complaint also alleged that McLemore's death was caused by the failure of the City and Chief Harper to train and to supervise properly the jail staff and the officers. Plaintiff asserted that, under § 1983, Defendants' deliberate indifference to McLemore's safety caused his death and violated his due process rights. Plaintiff also presented state law claims (1) for wrongful death, based on Defendants' willful, wanton, and malicious behavior, and (2) for the City's and Chief Harper's negligent training and supervision.

We review a district court's grant of a motion to dismiss de novo; we take as true the facts as alleged in the complaint. Owens v. Samkle Auto., Inc., 425 F.3d 1318, 1320 (11th Cir. 2005). A motion to dismiss under Fed.R.Civ.P.

3

12(b)(6) should be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief.  White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999).

Plaintiff argues first that Harris and Harrison deprived McLemore of his due process rights.  Plaintiff contends that Harris and Harrison owed a duty to protect McLemore because he had a substantive due process right to bodily integrity.[1]  Plaintiff asserts that the officers breached their duty to McLemore when they were deliberately indifferent to a risk of serious harm to him.  And Plaintiff maintains that this deliberate indifference shocks the conscience: the officers had the time and means to prevent the harm to McLemore, but chose to do nothing.

Plaintiff has not alleged a deprivation of McLemore's due process rights.  We are guided by the proposition that generally "a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties."  Mitchell v. Duval County Sch. Bd., 107 F.3d 837,

---

[1]Plaintiff also contends that Defendants owed a duty to protect McLemore because of his "special relationship" with Defendants--he effectively was in custody when murdered--and because Defendants created the danger to which McLemore was exposed.  But this Court has written that the "special relationship" and "state created danger" doctrines no longer are valid.  See Waddell v. Hendry County Sherriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003); White, 183 F.3d at 1257-59.  And Plaintiff's contention that Harrison and Harris owed McLemore a federal due process duty to protect based on state tort law and on Ala. Code § 14-6-105, which provides that jails have a night watchman, is not material.  See Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983").

4

838 (11th Cir. 1997).  And the government's automatic duty to protect persons from harm by third parties is limited to custodial relationships: "those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves."  White, 183 F.3d at 1257.  McLemore was not so confined when Brown murdered him: the complaint alleges that McLemore "was released from jail on his own recognizance" without having to post bond.  Thus, the conduct of Defendants "will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense."  Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003).

We have cautioned that, in a non-custodial setting, "a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [McLemore's] position."  Id. at 1306 (emphasis added).  And we do not determine if Defendant's conduct was egregious "in the glow of hindsight; decisions made by a government actor must be egregious--that is, shock the conscience--at the time the government actor made the decision."  Id. at 1305 (emphasis in original).

5

Taking the facts in the complaint as true, the acts of Harris and Harrison are not "conscience shocking." We are aware that Harris and Harrison allegedly did not follow state law and the instructions of McLemore's parole officer in releasing him from jail without posting bond. But even if the officers' acts violated state law, Plaintiff has presented no case law that McLemore had a substantive due process right to be held in jail until his parole officer said he could be released. See id. at 1306-07.

That Harris and Harrison ignored the warning that Brown would kill McLemore for trying to "set him up," and that the officers did not do enough to protect McLemore when he was sent to make the drug buy, do not rise to the level of "conscience shocking." See Nix v. Franklin County Sch. Dist., 311 F.3d 1373, 1376 (11th Cir. 2002) (determining that teacher's use of live wire in class demonstration, where teacher knew that electricity running through wire was enough to cause death and that students might touch wire, did not shock the conscience to set forth a substantive due process claim). The complaint alleges that McLemore had been a drug informant for the Athens Police Department in the past: Plaintiff does not argue that McLemore was unaware of the risks of being an informant. See United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1985) (noting the dangers inherent in narcotics dealing, including the prevalence of firearms).

6

The complaint also alleges that McLemore had reached an agreement with the officers to perform as a drug informant with the hope that he would receive a benefit from this arrangement. Thus, the complaint does not allege that McLemore was forced to function as an informant. In other words, McLemore decided to become a drug informant, he was experienced in acting as such, and Plaintiff does not allege that the officers acted maliciously. The acts of Harris and Harrison--releasing McLemore from jail and using him as an informant--were not so egregious as to establish a substantive due process violation.

Because we determine that Harris and Harrison's conduct did not cause McLemore to suffer a constitutional deprivation, we need not decide whether the officers were entitled to qualified immunity.[2] See Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001) (stating that "threshold inquiry" in qualified immunity analysis is whether Plaintiff's allegations, if true, establish constitutional violation, and that, if no constitutional violation exists, one need not inquire further into qualified immunity). Because the complaint failed to state a constitutional deprivation, neither the City nor Harper can be liable under § 1983 based on (1) an alleged policy of allowing officers to violate state law by illegally removing detainees and

---

[2]After determining that the officers did not violate McLemore's constitutional rights, the district court concluded that the officers and Chief Harper were entitled to qualified immunity.

7

making non-enforceable agreements with suspects, or (2) a failure to train and supervise properly the jail staff and officers. See Rooney v. Watson, 101 F.3d 1378, 1381-82 (11th Cir. 1996) (where plaintiff suffers no constitutional deprivation, courts need not consider policy or custom of municipality). In sum, we affirm the district court's dismissal of Plaintiff's § 1983 claims.[3]

Plaintiff next argues that Defendants are not entitled to discretionary-function immunity on the state law wrongful death and negligent training and supervision claims.[4] Alabama law provides immunity from tort liability for police officers performing discretionary functions within the scope of their law enforcement duties. See Ala. Code § 6-5-338(a). In analyzing discretionary-function immunity claims, Defendants first must prove that they "were engaged in the performance of discretionary functions at the time the alleged torts occurred." Sheth v. Webster, 145 F.3d 1231, 1238 (11th Cir. 1998). Plaintiff then must show

---

[3]We also reject Plaintiff's assertion that he stated a § 1983 claim against Brown. Plaintiff pled no facts showing that Brown, a drug dealer whom the officers wished to set up, was acting under color of state law when he killed McLemore. See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) (stating that successful § 1983 action requires showing that conduct complained of was committed by a person acting under color of state law).

[4] Plaintiff does not appeal the dismissal of her claim based on Ala. Code § 14-6-105, which provides that jails have a night watchman. Instead, in connection with her § 1983 claims, she cites § 14-6-105 to show that Defendants had a state law duty to protect McLemore because he had been detained at the jail. We do not address a substantive claim based on § 14-6-105.

that Defendants "acted in bad faith, with malice or willfulness in order to deny them immunity." Id. at 1239.

Thus, we first must determine whether Defendants were engaged in the performance of discretionary functions at the time the wrongful death tort occurred. Discretionary acts are acts about which "no hard and fast rule" exists "on the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Sheth, 145 F.3d at 1239 (citation omitted).

Plaintiff argues that the Harris and Harrison acted outside the scope of their authority under Alabama law because (1) only a judicial officer, not police officers, may release an arrestee on his own recognizance, also known as "judicial public bail," (2) McLemore was on probation at the time of his arrest and not eligible for judicial public bail, (3) McLemore's parole officer had placed a hold on him for violating parole, and (4) only prosecutors, not law enforcement, have the authority to enter into agreements with arrestees. Plaintiff may be correct that the officers violated state law in releasing McLemore on judicial public bail and that the officers' alleged offer of leniency would not have been enforceable. Nevertheless, these acts occurred before and are remote from the wrongful death

9

tort. We do not see how these acts caused McLemore's later shooting death when he was functioning as a drug informant.

So, the proper inquiry is whether the officers' use of McLemore as an informant, as part of an attempt to "set up" a drug buy from Brown, was within the scope of the officers' discretionary functions. We answer affirmatively. See Ex Parte Cranman, 792 So. 2d 392, 405 (Ala. 2000) (noting that state agent is immune from liability when exercising judgment in enforcing state criminal laws, including "law-enforcement officers' arresting or attempting to arrest persons"). And Plaintiff does not contend that the use of McLemore as a drug informant was outside the scope of the officers' discretionary functions.

About the second element of the discretionary-function immunity analysis, Plaintiff did not allege that the officers intended for Brown to murder McLemore. And the complaint reflects that McLemore decided to function as a drug informant to obtain a benefit: the complaint does not allege that the officers forced McLemore to act as such. Plaintiff alleged no facts suggesting that the officers' use of him as a drug informant was willful, malicious, or in bad faith. See Sheth, 145 F.3d at 1239. Harris and Harrison are entitled to discretionary-function immunity.

The district court also correctly dismissed Plaintiff's state law claim against Chief Harper based on an alleged failure to train and supervise the officers and jail staff. Training and supervising employees is a discretionary function. See Howard v. City of Atmore, 887 So. 2d 201, 209-10 (Ala. 2003). And Plaintiff alleged no facts suggesting that Chief Harper acted willfully, maliciously, or in bad faith.

Because the officers and Chief Harper are entitled to discretionary function immunity based on their acts, the City also is entitled to immunity. See Ala. Code § 6-5-338(b); Ex Parte City of Gadsden, 781 So. 2d 936, 940 (Ala. 2000). In sum, the district court correctly dismissed Plaintiff's wrongful death claims against the officers and the City based on discretionary-function immunity.

AFFIRMED.