[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11576
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-21765-RNS

ROBERTO VASCONCELO,

Plaintiff-Appellant,

versus

MIAMI AUTO MAX, INC.,
d.b.a. Car Depot of Miami,
d.b.a. Car Depot of Miramar,
KENNYA QUESADA,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 16, 2021)

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Roberto Vasconcelo sued Miami Auto Max, Inc. and its owner, Kennya Quesada, under the Fair Labor Standards Act, bringing a single claim for unpaid minimum wages.  A jury found in Vasconcelo's favor but awarded him only $97.20 in damages.  He now appeals the district court's order denying his rule 60(b) motion for a new trial on damages.  We affirm the district court's order.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

We've previously recounted the general facts of this case in an opinion arising from Vasconcelo's direct appeal of the district court's final judgment following the jury verdict:

> Vasconcelo worked as a sales associate for Miami Auto Max from November 2016 until July 2017. Miami Auto Max paid its sales associates a "draw against commission"; associates earned commissions on the cars they sold and were paid a weekly draw against their commissions of an amount equal to the minimum wage multiplied by their number of hours worked.  To the extent a sales associate's draw exceeded his earned commissions, the difference was carried forward in perpetuity and applied against future commissions.  Vasconcelo struggled to sell enough cars to offset the draws against his commissions, and his total draws exceeded his commissions by $2,739.21 after his last month on the job.
>
> On May 12, 2017, Vasconcelo sued Miami Auto Max and its owner, Kennya Quesada, to recover damages for unpaid wages under the Fair Labor Standards Act.  He alleged that his weekly draws were not wages at all, but a debt owed to Miami Auto Max.  He also alleged that he was required to work off the clock and not paid a minimum wage for those hours, that Miami Auto Max took unwarranted deductions from his time logged, and that it did not pay him on time.  Based on the theory that none of his weekly draws counted as minimum-wage payments, he

2

estimated that he was owed $6,397.65 in unpaid wages plus an equal amount in liquidated damages under the Fair Labor Standards Act, for a total of $12,795.30.

\* \* \*

The case proceeded to a two-day jury trial. Vasconcelo argued that Miami Auto Max's entire "draw against commission" plan violated the Fair Labor Standards Act. He also presented testimony that his manager twice failed to adjust his time cards to reflect that he had been working since 9:00 a.m. after he forgot to punch in until around 3:00 p.m., which meant that he was not paid for 12 hours of work. The jury found that Miami Auto Max had failed to pay Vasconcelo a minimum wage for all hours worked and awarded him $97.20 in damages, exactly 12 hours of minimum-wage payments. The district court entered judgment in favor of Vasconcelo for $97.20.

After trial, Vasconcelo moved to amend the judgment to include an additional $97.20 in liquidated damages under the Fair Labor Standards Act . . . . He also moved for judgment as a matter of law on one alleged violation of the Act, and he moved alternatively for a new trial based on improper jury instructions.

The district court denied Vasconcelo's motion for judgment as a matter of law or a new trial, but it granted in part his motion to amend the judgment. It vacated the final judgment . . . and agreed that the new final judgment should include an award of $97.20 in liquidated damages . . . . On October 30, 2018, the district court entered a final judgment for $194.40 in damages.

Vasconcelo v. Miami Auto Max, Inc., 981 F.3d 934, 937–38 (11th Cir. 2020). We now add the following facts relevant to the issues raised by this appeal.

On January 6, 2017, Vasconcelo signed Miami Auto Max's sales associate pay plan. This plan didn't require Vasconcelo to work without compensation. A copy of his pay plan came into evidence at trial.

3

Prior to trial, Vasconcelo obtained a blank sales associate pay plan under Miami Auto Max's letterhead. This version of the pay plan required the sales associate to complete his or her first week of training "without compensation." Although this plan had signature lines for the company's general manager—George Sotomayor—and the sales associate, the copy Vasconcelo had was unsigned and undated. In discovery, Vasconcelo requested copies of "all policies and procedures" explaining "the pay practices of the [d]efendants as they pertain[ ] to its sales staff." Miami Auto Max produced responsive documents but didn't disclose a pay plan requiring Vasconcelo or any other employee to work without pay.

Vasconcelo's counsel asked Quesada in deposition about the unsigned pay plan. She testified that Sotomayor proposed the pay plan in early 2017 but she didn't authorize it because of the unpaid training provision. Quesada didn't think the plan was ever put into effect but stated that Sotomayor knew more about it and "would know whether or not he ever implemented this plan[.]" Vasconcelo didn't depose Sotomayor.

At trial, Quesada testified that her company complied with labor regulations when Vasconcelo worked for Miami Auto Max. She stated that she understood "exactly what the law required" and had procedures in place to ensure that employees didn't work off the clock. Quesada testified that Sotomayor's proposed pay plan "never took place" and "was tossed right away." Christine Dawkins, Miami

4

Auto Max's office manager, likewise testified that no employee was ever asked to work without pay. She didn't know whether Sotomayor's proposed pay plan was ever implemented while Vasconcelo worked for Miami Auto Max. The district court sustained Miami Auto Max's objection to the admission of the proposed pay plan at trial because it was irrelevant, unsigned, and there was no evidence linking it to Vasconcelo's employment.

On August 6, 2018, several months after the trial, Vasconcelo sued Miami Auto Max in state court, bringing claims for retaliation under the Fair Labor Standards Act, breach of contract, and unpaid wages. On September 19, 2019, Miami Auto Max produced as discovery in the state court case a signed copy of the pay plan Sotomayor had proposed. This document was dated February 21, 2017 and was signed by Sotomayor and a sales associate named Alexander Bozzetti. Like the unsigned version Vasconcelo tried to introduce at trial, this plan required Bozzetti to complete his first week of training without pay.

On October 30, 2019—exactly one year after the entry of final judgment—Vasconcelo filed a rule 60 motion for relief from final judgment.[1] He argued that the pay plan executed by Bozzetti was discoverable and would have been admissible at trial had it been disclosed. Vasconcelo argued that the pay plan was newly

---

[1] Vasconcelo also sought reconsideration of the district court's order denying his motion for new trial on damages. That order had been entered on July 3, 2018.

discovered evidence entitling him to relief under rule 60(b)(2). He also argued that he was entitled to relief under rule 60(b)(3) because of Quesada's alleged misrepresentations about the non-disclosed pay plan. Finally, Vasconcelo requested an evidentiary hearing.

Miami Auto Max opposed Vasconcelo's rule 60 motion. It argued that Vasconcelo's motion was untimely. Miami Auto Max also argued that Vasconcelo's claims failed on the merits because Bozzetti's pay plan was immaterial and wouldn't produce a new result at trial, and because Vasconcelo failed to prove by clear and convincing evidence that Miami Auto Max had prevented him from fully and fairly presenting his case at trial.

The district court denied Vasconcelo's motion. The district court concluded that the motion was untimely because it hadn't been filed within a reasonable amount of time. The district court also concluded that Vasconcelo's motion failed on the merits even if it was timely. As to the rule 60(b)(2) claim, the district court found that Vasconcelo hadn't established that he diligently sought Bozzetti's pay plan, hadn't established that it was material, and hadn't established that it would have produced a different result at trial. As to the rule 60(b)(3) claim, the district court found that Vasconcelo failed to establish clear and convincing evidence that Miami Auto Max obtained the verdict through fraud, misrepresentation, or misconduct. Finally, the district court denied Vasconcelo's request for an evidentiary hearing.

6

**STANDARD OF REVIEW**

We review the district court's order denying relief under rule 60(b) for an abuse of discretion. Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003). We also review a district court's order denying a request for an evidentiary hearing in support of a rule 60(b) motion for an abuse of discretion. See Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006).

**DISCUSSION**

Vasconcelo argues that the district court erred by: (1) concluding that his rule 60 motion was untimely; (2) analyzing his rule 60(b)(2) and rule 60(b)(3) claims separately from each other; (3) denying relief under rule 60(b)(2); (4) denying relief under rule 60(b)(3); and (5) denying his request for an evidentiary hearing. We assume without deciding that his motion was timely and affirm. Even if Vasconcelo's motion was timely, his claims fail on the merits. We address them in turn.

*The Bifurcation of Vasconcelo's Claims*

Vasconcelo first argues that the district court erred by "bifurcating" his rule 60(b) claims and analyzing his rule 60(b)(2) claim "separately" from his rule 60(b)(3) claim. We disagree.

A claim for relief under rule 60(b)(2) is separate and distinct from a claim for relief under rule 60(b)(3). See Waddell, 329 F.3d at 1309 (explaining the different

requirements for relief under rule 60(b)(2) and rule 60(b)(3)).  Thus, the district court didn't err by separately analyzing Vasconcelo's rule 60(b) claims.  See Wortley v. Chrispus Venture Capital, LLC (In re Global Energies, LLC), 763 F.3d 1341, 1347 (11th Cir. 2014) (observing that a party raising a rule 60(b)(2) claim and a rule 60(b)(3) claim had raised "two grounds" for relief, and analyzing the rule 60(b)(2) claim separately); Venture Indus. Corp. v. Autoliv ASP, Inc., 457 F.3d 1322, 1328 (Fed. Cir. 2006) ("We address Autoliv's [r]ule 60(b)(2) and [r]ule 60(b)(3) arguments separately.").  We too separately analyze his rule 60(b) claims.

*The Rule 60(b)(2) Claim*

"For the court to grant relief based upon newly discovered evidence under [r]ule 60(b)(2), a movant must meet a five-part test:  (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result."  Waddell, 329 F.3d at 1309.  "A motion for a new trial under [r]ule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met."  Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000).  Here, the district court found that Vasconcelo hadn't satisfied this test's second, fourth, and fifth prongs.

As to the second prong, the district court found that Vasconcelo hadn't established that he diligently sought to obtain the pay plan prior to trial. In deposition, Quesada testified that the pay plan "was going to be implemented" by Sotomayor but she didn't approve it because of the unpaid training provision. But Quesada wasn't unequivocal; she didn't "think" the pay plan went into place and stated that Sotomayor "would know the most about" whether he implemented it. Even though Vasconcelo's counsel deposed Quesada two months before trial, he didn't depose Sotomayor. Because Vasconcelo didn't even try to depose Sotomayor, who knew the most about the proposed pay plan, and Quesada was clear that Sotomayor would know if the plan had ever been implemented, we can't say that the district court clearly erred in finding that Vasconcelo didn't act with due diligence. See Jenkins v. Anton, 922 F.3d 1257, 1270–71 (11th Cir. 2019) (a district court's finding of fact in ruling on a rule 60(b) claim is reviewed for clear error); Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

As to the fourth and fifth prongs, the district court found that Bozzetti's pay plan wasn't material and wouldn't probably produce a different result at a new trial. In reaching this determination, the district court found that: (1) the pay plan at issue applied to Bozzetti, not Vasconcelo; (2) Bozzetti signed it three months after

9

Vasconcelo started working for Miami Auto Max; (3) the pay plan that Vasconcelo did sign was in evidence (which didn't require that he train his first week for free); (4) Miami Auto Max paid Vasconcelo for his first week on the job; (5) there was no connection between Vasconcelo's claim that Miami Auto Max sometimes required him to work off the clock and a pay plan pertaining to an unrelated employee's training period; and (6) the jury had already found in Vasconcelo's favor as to Miami Auto Max's liability for not paying him a minimum wage for every hour that he worked.

Once again, we can't say that the district court clearly erred in making these findings. Most, if not all, of the above facts were uncontested. And each one cut against Vasconcelo's argument that Bozzetti's pay plan would have likely produced a different result. The damages verdict would not have changed simply because Miami Auto Max may have not paid a different employee for his first week because it indisputably paid Vasconcelo for his first week. Because the district court didn't abuse its discretion in concluding that Vasconcelo hadn't established his entitlement to the extraordinary relief he sought, we affirm the order denying Vasconcelo's rule 60(b)(2) claim. See Jenkins, 922 F.3d at 1270–71.

*The Rule 60(b)(3) Claim*

"To obtain relief from a final judgment based upon fraud under [r]ule 60(b)(3), the moving party must prove by clear and convincing evidence that the

adverse party obtained the verdict through fraud, misrepresentations, or other misconduct." Waddell, 329 F.3d at 1309. The moving party must also show that the alleged misrepresentations prevented him from fully and fairly presenting his case. See Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000).

Here, the district court found that "the testimony Vasconcelo present[ed]"—Quesada's deposition and trial testimony—didn't amount to clear and convincing evidence that Miami Auto Max obtained the verdict through fraud, misrepresentation, or misconduct. The district court found that it wasn't even clear that Quesada's testimony "amount[ed] to misrepresentations." Quesada's testimony could have simply been "a reflection of her mistaken understanding" of "the underlying facts," the district court explained, because her deposition testimony about the pay plan wasn't "absolute and unequivocal."

As we observed above, and consistent with the district court's findings, Quesada was equivocal in deposition about whether Sotomayor's proposed pay plan was ever implemented. She could only say that she thought it never went into effect, and candidly acknowledged that Sotomayor would know better. Although Quesada testified at trial without qualification that Sotomayor's pay plan wasn't implemented, this could just have been her mistaken understanding of the facts rather than an intentional misrepresentation. We can't say that the district court's finding that Vasconcelo didn't establish by clear and convincing evidence that

11

Miami Auto Max obtained the verdict through fraud, misrepresentation, or other misconduct was clearly erroneous.  Given the highly deferential standard of review, we have no basis on this record to disturb its finding.

Vasconcelo argues that the district court erred by only considering whether he established by clear and convincing evidence that Quesada's testimony was a misrepresentation, and not considering whether Miami Auto Max's failure to disclose the Bozzetti pay plan in discovery was misconduct.  But the district court's ultimate finding was that Vasconcelo failed to meet his burden of showing that Miami Auto Max obtained the verdict through "fraud, misrepresentations, or other misconduct."

Vasconcelo also argues that, even if Quesada's subjective intent was relevant to whether her testimony was fraudulent, her testimony was still objectively a misrepresentation of the facts even if her intentions were innocent.  But the question before the district court wasn't whether Vasconcelo established by clear and convincing evidence that Quesada misrepresented the facts.  The question was whether he "prove[d] by clear and convincing evidence that [Miami Auto Max] obtained the verdict" through misrepresentation.  See Waddell, 329 F.3d at 1309 (emphasis added).  The district court found that he had not, and we cannot say that it clearly erred in making that finding.  See Jenkins, 922 F.3d at 1270–71.  As we discussed above, the pay plan at issue applied to a different employee, was signed

three months after Vasconcelo started working for Miami Auto Max, and Vasconcelo was paid for his first week of work. Because the Bozzetti pay plan had no bearing on Vasconcelo's damages, it cannot be said that Miami Auto Max obtained the verdict through a misrepresentation about an immaterial document. Thus, we affirm the district court's order denying Vasconcelo's rule 60(b)(3) claim.

*The Request for an Evidentiary Hearing*

Vasconcelo finally argues that the district court erred by denying his request for an evidentiary hearing on his rule 60(b) claims. An evidentiary hearing was necessary, Vasconcelo argues, because of "the complex nature of the facts of the case" and to resolve whether Quesada's trial testimony was an innocent mistake of fact or an intentional misstatement.

In Jenkins, we observed that the district court's factual finding on the plaintiff's rule 60(b)(3) claim—"that the alleged misconduct [by the defendants] did not prevent [the plaintiff] from fully presenting her case"—was not "clearly erroneous simply because it did not hold an evidentiary hearing, especially in light of the reasons [for denying relief] the [c]ourt gave." 922 F.3d at 1270–71. So too here. Although the resolution of Vasconcelo's rule 60(b) claims required fact finding, nothing in rule 60(b) or our case law interpreting it compelled the district court to hold an evidentiary hearing before making its findings. We cannot conclude that the district court abused its discretion in determining that Vasconcelo's rule

13

60(b) claims could be resolved without an evidentiary hearing, see Cano, 435 F.3d at 1342, "especially in light of the reasons" it gave for denying him relief, see Jenkins, 922 F.3d at 1271.

**AFFIRMED.**