[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13073

_____

D.C. Docket No. 8:15-cv-00283-JSM-AEP

JENNIFER JENKINS,

Plaintiff-Appellant,

versus

S. DAVID ANTON, PA,
d.b.a. Anton Legal Group,
S. DAVID ANTON,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 29, 2019)

Before TJOFLAT, MARCUS, and, NEWSOM, Circuit Judges.

TJOFLAT, Circuit Judge:

Jennifer Jenkins worked as a paralegal for David Anton for about nine

months.  She had a flexible work schedule, and records of the hours she worked

were not kept.  After her employment ended, Jenkins sued Anton and his law firm for unpaid overtime wages under the Fair Labor Standards Act.  The case was tried to the District Court, which entered judgment in favor of Anton.  Jenkins moved for relief under Rules 59 and Rule 60 of the Federal Rules of Civil Procedure.  Her motion was denied, and she appealed.  On appeal, she says the District Court abused its discretion by denying relief under Rule 59 and Rule 60.  She also argues that the Court misapplied the legal standard in ruling against her, and she claims the Court should have recused.  We affirm.

We divide our discussion into three parts.  First, we set out the evidence that was presented to the District Court during the bench trial.  Second, we consider the arguments on appeal.  Third, we conclude.

## I.

We refer to Jenkins as "Employee" and Anton as "Employer" for convenience.

## A.

The parties stipulated to a bench trial.  Almost two weeks thereafter, Employee filed a notice of disclosure with the District Court.  There, she notified the District Court that Employer had represented the District Judge's ex-wife in the couple's divorce proceedings.  Employee never asked the District Judge to recuse, and he continued to preside over the case.  The case proceeded to trial.

At trial, the parties told two very different stories. According to Employee, she typically arrived in the office by 8:15 a.m. and left sometime between 6:30 p.m. and midnight. She said she worked about 70 hours a week. Altogether, she claimed that she worked 711 hours of unpaid overtime. (This was a revised calculation; she originally claimed 1078.88 hours but reduced the number at trial after reviewing documents she received in discovery and after subtracting vacation-related time.) To support her claim for overtime, Employee introduced into evidence emails that she sent Employer after normal business hours and on weekends. She also argued that these emails were probably just a subset of all the emails she sent after hours. She didn't have all of the emails because soon after she left the law firm, her successor deleted many of her emails.

Employer told a different story. He said that Employee originally agreed to work a fixed schedule. But the schedule became more flexible, according to Employer, because Employee took a lot of time off and worked later hours to make up the time. He didn't keep a record of the hours she worked, but he testified that she never worked more than 40 hours a week. He gave a few reasons why he believed that. First, Employer said that Employee's predecessor never worked "anywhere near 40 hours a week." (Employee's predecessor did not testify, and that becomes important later.) Employee's successor never worked overtime, either. Second, he explained that his practice was slow while Employee worked

3

for him.[1]  Third, he noted that he could see her office from his, and he saw her studying—not working—at times.[2]

Employer also addressed the emails that Employee sent after hours and on the weekends: he said it would not have taken Employee more than a few minutes to type those emails and to send them to him.  They were short emails.

Other witnesses echoed Employer's testimony.  For example, the firm's bookkeeper—who came in two days a week, four hours each day, the entire time Employee worked at the firm—never saw Employee working at a "harried pace."  Nor did the bookkeeper ever notice Employee being pressed for time at work.  In the bookkeeper's opinion, there was not enough work at the firm to fill even 40 hours of Employee's time each week.  And Employee never told the bookkeeper that she was working overtime and should be paid for it, even though the bookkeeper was the one who told the payroll company how many hours each employee should be paid for, which Employee knew.

Another witness bolstered Employer's testimony.  This witness worked for a different lawyer, but she shared the same office space as Employee for three months.  She said that Employee's workload was "[n]ot particularly heavy"; most

---

[1] Employer introduced billing records from several years to support this statement.  In 2011, his firm billed 1883 hours.  In 2012, his firm billed 1809 hours.  In 2013—the year Employee worked for him—his firm billed 1342 hours.  And in 2014, his firm billed 1851 hours.

[2] Employee was taking college classes while working for Employer.

of the clients belonged to the lawyer she worked for and not Employer. And Employee did not work on matters related to those clients. The witness explained that her boss eventually left the firm, and Employer kept her on for a while. There was not enough client-related work to keep the witness busy, so Employer asked her to clean the office and to organize rooms. Employer eventually had to let the witness go because there was not enough work for her to do.

The same witness also replaced Employee when she left Employer's law firm. Despite taking over all of Employee's responsibilities, and despite having less paralegal experience than Employee, the witness did not work overtime for Employer.

Finally, Employer's current paralegal testified. She said that Employer had about 15 active cases that she worked on. With that caseload—which was similar to Employer's caseload while Employee worked for him—she had never worked overtime.[3] In fact, the witness said, she didn't even work 40 hours a week.

As is apparent from our discussion thus far, much of the testimony was pretty vague and generic. But the parties did testify more specifically about the work Employee did—or didn't do—during an arbitration that Employer handled and Employee attended. The arbitration lasted four days, Tuesday through Friday.

---

[3] Employer testified that he had 17 active cases when Employee started. He said that he typically has anywhere from 12 or 15 to 20 active cases at one time.

The parties agreed that Employee worked the Saturday and Sunday before the arbitration. But Employer said that Employee "took a lot of time off" during the normal workweek (Monday through Friday) that preceded the weekend. (As we explain below, it is important whether the hours Employee worked on Sunday count as part of her workweek for the week of the arbitration, or if they count as part of the prior workweek.) Employee claimed she worked "13 or 14 hours" the Monday before the arbitration.

As for the arbitration itself, each day had a three-hour morning session, followed by an hour-and-a-half lunch break, and a three-hour afternoon session. During lunch, Employer and Employee stayed at the facility and ate with their expert witness. Both parties agreed that they talked about the case during lunch. Employee testified that she worked "about 70 hours" or "[a] little over 70 hours"—like she did "most weeks"—the week of the arbitration.

### B.

The District Court resolved the he-said-she-said swearing match in Employer's favor. It concluded that Employer's "testimony [was] more credible because it better matche[d] the other evidence . . . , particularly the testimony of other employees." Based on this credibility determination, the Court found that Employee did not prove that she worked more than 40 hours in any given workweek.

6

The Court explained some of the evidence that supported Employer's version of events. It noted that the firm billed fewer hours the year that Employee worked there than it did the two years before Employee came on and the year after she left. This was consistent with Employer's claim that business was slower than normal while Employee worked for him. The Court also found that Employer's description of his practice was consistent with the bookkeeper's; the bookkeeper said that Employer's practice was not busy compared to other lawyers she worked for, and she never noticed Employee rushing or working through lunch.

Employer's version was also consistent with the testimony of Employee's successor. The Court pointed out that Employer had the successor do "busy work" during the three months that she overlapped with Employee, and this was because Employee needed no help with paralegal work. The successor also said that the workload was light when she took over for Employee, and she never worked through lunch or on a weekend. And finally, Employer's current paralegal testified that she never came close to working overtime.

The Court discounted the emails that Employee sent after normal business hours because many of them would have taken Employee no more than "two or three minutes to draft." Others were unrelated to work or asked for time off. The Court said the closest Employee came to proving that she worked overtime was the week of the arbitration. It found that the time Employee worked the Saturday

7

before the arbitration did not make up for the time she took off earlier in the week. The Court said Employee's claim that she worked late the Monday before the arbitration was "conclusory" because she didn't identify any work she did.  It also rejected Employee's claim that the lunches during the arbitration were working lunches because she didn't point to any work she did and said only that they talked about what happened during the morning sessions.  And finally, Employee's claim that she worked late nights during the arbitration suffered a similar fate: the Court rejected it because Employee didn't identify any work she did.

Employee moved for relief under Rule 59 and Rule 60 based on several grounds.  The District Court denied the motion, and Employee appealed.  We explain below why the District Court denied relief under Rule 59 and Rule 60.

## II.

Employee makes four arguments on appeal: (1) the District Court abused its discretion by denying relief under Rule 59, (2) the District Court abused its discretion by denying relief under Rule 60, (3) the District Court misapplied the legal standard when it found that Employee did not prove she worked overtime, and (4) the District Court abused its discretion by not recusing *sua sponte*.  We take up each argument separately.

A.

Employee moved the District Court to alter or amend the judgment under Rule 59(e).[4]  Alternatively, she moved to open the judgment under Rule 59(a)(2) or for a new trial under Rule 59(a)(1)(B).[5]  We first set out the relevant legal standards and then consider Employee's arguments.

1.

Under Rule 59(e), a district court may "alter or amend a judgment."  Fed. R. Civ. P. 59(e).  There are no specific grounds for relief listed in Rule 59(e).  But we have said that a district court may alter or amend a judgment that is based on "manifest errors of law or fact."  *See Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1008 (11th Cir. 2018).  The Rule 59(e) motion looks back at

---

[4] Rule 59(e) reads as follows: "**(e) Motion to Alter or Amend a Judgment.**  A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).

[5] Here are the relevant parts of Rule 59(a):

**Rule 59.  New Trial; Altering or Amending a Judgment**

**(a) In General.**

**(1)** *Grounds for New Trial.*  The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

. . .

**(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

**(2)** *Further Action After a Nonjury Trial.*  After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

Fed. R. Civ. P. 59(a).

what was; it does not look forward at what could have been.  For this reason, a

district court should not grant relief under Rule 59(e) after a nonjury trial based on

newly discovered evidence.[6]  We review a district court's decision on a Rule 59(e)

motion for abuse of discretion.  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327,

1343 n.20 (11th Cir. 2010).

Rule 59(a)(2), by contrast, does look forward at what could have been.  It

says that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the

judgment if one has been entered, take additional testimony, amend findings of fact

and conclusions of law or make new ones, and direct the entry of a new judgment."

---

[6] This is not to say a party is out of luck if it wants to present newly discovered evidence
after a nonjury trial.  Our point is only that Rule 59(e) is the wrong vehicle.  Indeed, Rule
59(a)(2) specifically allows a district court to open the judgment, take additional evidence,
amend its findings of fact and conclusions of law, and enter a new judgment.  Rule 60(b)(2)
reinforces this reading of Rule 59(e):

**Rule 60.  Relief from a Judgment or Order**

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On
motion and just terms, the court may relieve a party or its legal representative
from a final judgment, order, or proceeding for the following reasons:

. . .

**(2)** newly discovered evidence that, with reasonable diligence, *could not have
been discovered in time to move for a new trial under Rule 59(b)*[.]

Fed. R. Civ. P. 60(b) (emphasis added).  Rule 59(b) simply says how many days—after judgment
is entered—that a party has to file a motion for new trial under Rule 59(a).  So, Rule 60(b)(2)
supports our reading of Rule 59(e) because Rule 60(b)(2) strongly suggests that Rule 59(a) is the
proper vehicle for a new motion based on newly discovered evidence.  But if the party discovers
the new evidence more than 28 days after judgment is entered and misses the Rule 59 cutoff, *see*
Rule 59(b), the party may then move for relief under Rule 60(b).

Fed. R. Civ. P. 59(a)(2). A party should use this vehicle if it wants to present newly discovered evidence after a nonjury trial. *See supra* note 6.

And under Rule 59(a)(1)(B), a district court may grant a new trial "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). As relevant for our purposes, a district court may grant a new trial if "the verdict . . . will result in a miscarriage of justice."[7] *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (quoting *United States v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir. 1970)). We also review a district court's decision on a Rule 59(a) motion for abuse of discretion. *See id.*

2.

Employee argued that she was entitled to relief based on three grounds: (1) a previously unavailable witness was now available, (2) a newly discovered email that showed possible spoliation, and (3) errors related to the Court's finding that she did not work overtime the week of the arbitration. In effect, she argued that relief was appropriate under all three subsections—Rule 59(e), Rule 59(a)(2), and Rule 59(a)(1)(B)—based on each of the three claimed grounds.[8] We consider each

---

[7] A district court may also grant a new trial under Rule 59(a) if "the verdict is against the clear weight of the evidence." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (quoting *United States v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir. 1970)).

[8] We should note that Employee made her arguments to the District Court without tying them to the proper Rules. Instead, she made her arguments and then dumped at the end a cite to

11

ground—and whether it triggers relief under Rule 59(e), Rule 59(a)(2), or Rule 59(a)(1)(B)—separately.

i.

First, Employee asked the District Court to grant relief because her predecessor, an "impeachment witness," was unable to testify during the trial. We begin with Rule 59(e) and make quick work of it. The testimony of Employee's predecessor is additional evidence. Call it evidence from a previously "unavailable witness"—as Employee called it before the District Court—or call it newly discovered evidence—as Employee calls it on appeal. The point is that the testimony is additional evidence; it's not a mistake in the judgment. Thus, relief under Rule 59(e) is inappropriate.

Now for Rule 59(a)(2). According to Employee, the District Court relied on Employer's testimony in deciding the case in Employer's favor. And during Employer's testimony, he said that his office was not busy enough to require overtime, and he said that Employee's predecessor never worked any overtime.

In turn, Employee planned to "attack [Employer's] credibility" on this issue by calling her predecessor as a witness. Her predecessor, Employee said, would "directly rebut" Employer by testifying that she regularly worked 20 hours of

---

Rule 59(e), Rule 59(a), and Rule 60(b). To impose necessary structure, we pick her arguments that belong under each Rule and analyze them separately.

overtime during her employment. Employee coordinated with Court personnel so that her predecessor (who lived in Chicago) could testify by videoconference. But after the trial began, it was continued,[9] and Employee was unable to contact or locate her predecessor when the trial picked back up a month later. As it turned out, her predecessor had been in the hospital and had no access to her phone or email.

Oddly, Employee never brought any of this to the District Court's attention. Nor did she ask for a continuance so that she could locate this important witness. Employee kept the issue to herself apparently because she did not know *why* her predecessor was unavailable to testify. And because she didn't know why her predecessor was unavailable, she apparently thought she couldn't notify the District Court or ask for a continuance.

The District Court never raised the issue with the parties because it had no way of knowing that Employee planned to call this witness. Indeed, Employee never listed her predecessor on her trial witness list. And this must have been strategic because Employee knew—more than a year before the trial started—that Employer would say (if asked) that Employee's predecessor never worked

---

[9] Employee asked for a continuance because her son suffered a traumatic brain injury after the first day of trial. The Court granted the continuance, and things resumed about a month later.

overtime.  And Employee knew this because Employer said as much in his deposition.

To sum up, Employee knew well before trial that, if asked, Employer would say that Employee's predecessor never worked overtime.  So, Employee had her predecessor waiting in the wings, planning to call her to flatly contradict Employer's sworn testimony.  Yet she never tried—at least not on the record before the District Court—to call her predecessor as a potential witness.

As we said above, Rule 59(a)(2) is the proper vehicle if a party wants to present newly discovered evidence after a nonjury trial.  But this evidence— despite Employee's label for it—is not newly discovered.  Quite the opposite. Employee was making plans and setting up the logistics to call her predecessor as a witness *before* the trial began.  The only thing that is "new" about the testimony from Employee's predecessor is that she's finally available to give it.[10]  But this

---

[10] There's one thing we should point out on the topic of newly discovered evidence.  On appeal, the parties spend a lot of time arguing about how to label the testimony of Employee's predecessor.  On the one hand, Employee says that her predecessor's testimony potentially shows that Employer committed perjury.  On the other hand, Employer says that the testimony is impeachment only.  This perjury-or-impeachment distinction would matter *if* the testimony from Employee's predecessor were newly discovered evidence.  This is because, as the parties agree, newly discovered evidence does not trigger Rule 59 relief if that evidence simply impeaches other testimony or evidence.  *See Davis v. Yellow Cab Co. of St. Petersburg*, 220 F.2d 790, 792 (5th Cir. 1955) (*Davis* is binding because in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down by the close of business on September 30, 1981).  But this general rule does not apply when the newly discovered evidence potentially shows perjury.  *See United States v. Espinosa-Hernandez*, 918 F.2d 911, 913–14 (11th Cir. 1990).

14

does not help Employee, either, which takes us to the miscarriage-of-justice argument she made to the District Court.

In her motion to the District Court, Employee argued that it would be a "miscarriage of justice" if her predecessor were not allowed to testify. Her predecessor would "directly challenge" the reliability of Employer's testimony, and the District Court, according to Employee, relied heavily on Employer's credibility.

The District Court rejected the argument: "[T]here is no miscarriage of justice when [Employee's] inability to present [her predecessor's] testimony was due to [Employee's] strategic choices." The Court noted that Employee was not surprised by Employer's testimony because he gave the same testimony in his deposition. And the Court pointed out that Employee coordinated with her predecessor "in preparation for trial." The Court summed up with this: "If [Employee] wanted to ensure that the Court benefitted from [her predecessor's] testimony, she should have taken [her predecessor's] deposition and entered it into evidence."

---

The District Court denied relief under Rule 59(a) because "impeachment evidence is not sufficient to warrant a new trial." So, the parties understandably devote a good deal of the briefing to this issue. But because we find that the evidence is not newly discovered, we need not wade into the perjury-or-impeachment issue.

15

The District Court did not abuse its discretion by denying relief under Rule 59(a)(2). Specifically, there's no miscarriage because Employee made a strategic decision—to rest her case without asking for a continuance so that she could call her predecessor—and it backfired. And we know it was a strategic decision because nothing prevented Employee from raising the issue with the District Court and asking for a continuance. She claimed that she could not ask for a continuance because she did not know why her predecessor was unavailable. But the District Court could have granted a continuance if Employee made a showing of "good cause." M.D. Fla. Local Rule 3.09(a). And nothing in the local rules requires a party to explain *why* a witness is unavailable when asking for a continuance because an important witness is unavailable. Perhaps the District Court would have denied the request for a continuance—after all, Employee would have needed to explain why she left her predecessor off her witness list—but nothing prevented Employee from at least raising the issue.

Now, with the benefit of hindsight, and with the benefit of knowing that the District Court rejected her position at trial, Employee says her predecessor's testimony is indispensable. Without it, she says, there's a miscarriage a justice. We disagree. Here, Rule 59(a)(2) relief is inappropriate because Employee (1) knew about the testimony, (2) did not ask for a continuance, (3) hoped for the best, and (4) now, with the benefit of hindsight, asks for a second bite at the apple.

16

\*      \*      \*

We quickly pause to make an obvious observation: when a party asks for relief under Rule 59(a)(2) based on newly discovered evidence, the evidence must in fact be *newly discovered*. This case shows why. If we endorsed Employee's theory, parties would be incentivized to strategically manipulate Rule 59(a)(2). They would do so by rolling the dice and trying their case without a witness that they knew about well before trial. Then, they would wait and see if they won. Next, if they lost, they would run to the District Court asking for relief under Rule 59. Conveniently, that witness they chose not to call is—all of sudden—necessary for a full and complete trial. But odds are, if the witness really is necessary for a full and complete trial, the party would have presented the witness at trial. Or, if the witness was unavailable, the party would have at least asked for a continuance. If the party is willing to chance it by going to trial without the witness, we doubt that the witness is really that helpful. Even if the party's after-the-fact request for relief says otherwise. In any event, Rule 59(a)(2) does not reward parties who roll the dice with this wait-and-see approach.

## ii.

Second, Employee asked the District Court to grant relief because she discovered evidence after the trial that suggests Employer might have intentionally deleted evidence. We again begin with Rule 59(e), and we again make quick work

of it.  Relief under Rule 59(e) is inappropriate because the ground for relief is newly discovered evidence.

Now for Rule 59(a)(1)(B) (new trial) and Rule 59(a)(2) (open the judgment on a motion for new trial).  The newly discovered evidence was an email that Employer allegedly sent to his IT specialist two months after Employee filed this lawsuit.[11]  In the email, Employer asked his IT specialist to "delete all emails from 2014 and earlier" from the server's deleted items folder.  In her brief to the District Court, Employee argued that this evidence looked "like a deliberate attempt by [Employer] to destroy material information."  And because Employer did not turn the email over during discovery, Employee was unable to explore whether Employer engaged in spoliation.

The District Court rejected the argument.  It concluded that Employee did not "satisfactorily" explain how her approach would have changed if she had seen the email before trial.  The Court reasonably guessed that Employee would use the email to impeach Employer, but it explained that impeachment evidence isn't sufficient grounds for granting a new trial.

Next, the Court assumed that the email showed spoliation and asked whether applying an evidentiary presumption—that the deleted emails contained

---

[11] Employee says she received this email via U.S. mail two days after the District Court entered judgment in Employer's favor.  She claims there was no return address or other information on the envelope showing who sent it.

18

information that was unfavorable to Employer—would change the outcome of the trial. It held that the evidentiary presumption wouldn't change anything. The Court explained that Employee never claimed that the allegedly deleted emails would prove that she worked overtime. It said that, at best, the emails would show that Employee sent or received additional emails outside normal business hours. But the Court said it was aware during trial that additional emails like that might have existed; indeed, the Court heard testimony that Employee's successor deleted emails soon after Employee was terminated. Plus, there were emails introduced at trial showing that Employee sent or received emails outside normal working hours. Thus, the Court reasoned, additional emails would have been cumulative.

Finally, the Court explained that the email evidence would not prove that Employee worked overtime because there was evidence showing that she had a "flexible work schedule" and often took time off during normal hours. Nor could the email evidence overcome "significant testimony" from other witnesses. Two of these witnesses overlapped with Employee's time at the firm and testified that there was not enough work for Employee to work overtime. And two witnesses who succeeded Employee testified that they never even "came close" to working overtime.

Relief under Rule 59(a)(1)(B) and Rule 59(a)(2) is inappropriate because the email would not have affected the outcome of the trial. *See, e.g.*, 11 Charles Alan

19

Wright et al., *Federal Practice & Procedure* § 2808 (3d ed. Nov. 2018) ("Evidence that will not change the result does not merit a new trial [under Rule 59(a)]. Thus, newly discovered evidence that would merely affect the weight and credibility of the evidence ordinarily is insufficient for a new trial, as is evidence that is cumulative of evidence already offered." (footnotes omitted)). In light of the entire record, the District Court reasonably concluded that the outcome of the trial would have been the same, even if the email showed spoliation and the Court applied an evidentiary presumption against Employer. Thus, the District Court did not abuse its discretion by denying relief under Rule 59(a)(1)(B) and Rule 59(a)(2) based on the newly discovered email.[12]

iii.

Third, Employee argued that the District Court should grant relief because the judgment was based on manifest errors of law or facts. We begin with Rule 59(e). The Court erred, Employee argued, by finding that she did not work overtime during the arbitration in May of 2013. In making that finding, the Court overlooked the hours she worked the Sunday before the arbitration. If the Court had considered the hours Employee worked on Sunday, and if the Court had

---

[12] Employee does not seriously argue otherwise. She argues only that Employer's "actions prevented [her] from exploring whether [Employer] deliberately spoliated evidence or seeking sanctions."

The is the exact argument the District Court rejected, and Employee does not explain why the District Court's rejection amounts to an abuse of discretion.

applied "the most favorable workweek standard" to her,[13] it would have concluded that she worked overtime the week of Sunday, May 19, 2013, through Saturday, May 25, 2013. This is a proper Rule 59(e) argument.

The District Court agreed that it erred by overlooking the hours that Employee worked the Sunday before the arbitration. But it found that the error was harmless because it concluded Employee's workweek ran Monday through Sunday, not Sunday through Saturday. The Court found that "[i]t is more reasonable to conclude that the workweek started on Monday, given that the Parties described [Employee's] weekly work schedule as starting on Monday mornings."[14] Thus, the hours that Employee worked the weekend before the arbitration did not count toward the number of hours she worked the week of the arbitration. Instead, those weekend hours counted toward the number of hours that Employee worked the week before the arbitration. And because Employer testified that Employee took more time off at the beginning of that week than she worked on the weekend, the Court found that Employee did not work overtime the week before the arbitration.

---

[13] A "workweek is a fixed and regularly recurring period of . . . seven consecutive 24–hour periods" that "need not coincide with the calendar week but may begin on any day and at any hour of the day." 29 C.F.R. § 778.105. Employee did not explain why the Court should apply the workweek standard that was most favorable to her—Sunday to Saturday—instead of the standard that was supported by the evidence.

[14] The Court also noted that Employee did not cite any authority to support her argument that the workweek started on Sunday rather than Monday.

21

The District Court's finding that Employee's workweek ran Monday to Sunday is a finding of fact that we review for clear error.  *See Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1324 (11th Cir. 2008) ("We review factual findings made by a district court after a bench trial for clear error, which is a highly deferential standard of review.").

Under the Fair Labor Standards Act, overtime is calculated on a workweek basis.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.103.  "An employee's workweek is a fixed and regularly recurring period of . . . seven consecutive 24–hour periods" that "need not coincide with the calendar week but may begin on any day and at any hour of the day."  29 C.F.R. § 778.105.

The District Court did not clearly err in finding that Employee's workweek ran Monday to Sunday.  The parties presented little evidence at trial on this issue.  When asked whether he had a regularly recurring period of seven days that would amount to a workweek, Employer said he was "not sure."  Employer said he paid Employee twice a month, but he didn't know exactly how to classify the workweeks that made up the pay periods.  Employee testified that her employment began on a Monday.  On balance, the record supports a finding that the workweek began on Monday.  Employee argues that it was "more reasonable" to find that the workweek began on Sunday.  But even if that were true, given the lack of evidence, we would not be "left with the definite and firm conviction" that the

22

District Court erred. *See Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (explaining when a finding of fact is clearly erroneous) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)).

Thus, the District Court did not abuse its discretion by denying relief under Rule 59(e) based on its finding that the workweek began on Monday.

Finally, the District Court was correct to deny relief under Rule 59(a), because Employee did not make any Rule 59(a) arguments based on the Court's workweek finding of fact.

\*        \*        \*

Employee makes one more argument related to the arbitration.[15]  The arbitration lasted four days; each day had a three-hour morning session, a break for lunch, and a three-hour afternoon session.  In finding that Employee did not work overtime during the week of the arbitration, the District Court found that the breaks for lunch did not count toward overtime.  The Court said that Employee's "contention that lunch each day was a 'working lunch' is unsupported" because "[s]he d[id] not identify any work that was performed."

---

[15] It's not a Rule 59 argument because Employee didn't raise it in her Rule 59 motion. But we've included it in the Rule 59 section because it fits naturally with our discussion of whether the District Court erred in finding that Employee did not work overtime the week of the arbitration.

Employee argues that the District Court erred by excluding the lunches from the overtime calculation because lunches during work count toward overtime unless the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). And the "employee is not relieved if [s]he is required to perform any duties, whether active or inactive, while eating."[16] *Id.*

Interpreting 29 C.F.R. § 785.19, we have said that "what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer." *Avery v. City of Talladega*, 24 F.3d 1337, 1345 (11th Cir. 1994) (quoting *Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 n.19 (11th Cir. 1990)). So, unlike the District Court's Order suggests, Employee was not necessarily required to identify any "work" that she performed during lunch. That said, the District Court's finding of fact—which we review for clear error, *see Renteria-Marin*, 537 F.3d at 1324—that the lunches did not count is not clearly erroneous. Again, the parties presented little evidence on this issue at trial. Employee never said whether she was required to perform any duties during the lunch. Nor did she identify any limitations on her freedom. *See Avery*, 24 F.3d at 1345. She said only that they stayed at the facility through lunch, and they "talked about what [they] were doing." She also said they

---

[16] That said, the regulation also makes clear that "[b]ona fide meal periods are not worktime." 29 C.F.R. § 785.19(a).

24

ate with the expert and talked about work "the entire time."  On this record, we're not definitely and firmly convinced that the District Court made a mistake.  *See Anderson*, 470 U.S. at 573, 105 S. Ct. at 1511.

## B.

In addition to Rule 59, Employee moved for relief under Rule 60(b)(3).[17]  We again begin with the legal standards and then take up Employee's argument.

## 1.

Under Rule 60(b)(3), a district court may "relieve a party . . . from a final judgment" due to "fraud . . . , misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  To get relief under Rule 60(b)(3), "the moving party must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct."  *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003).  "The moving party must also demonstrate that the conduct prevented them from fully presenting his case."  *Id.*

We review the District Court's decision denying relief under Rule 60(b)(3) for abuse of discretion.  *See id.*

---

[17] She also moved for relief under Rule 60(b)(2).  The District Court denied relief, and Employee does not challenge that decision on appeal.

2.

Employee asked the District Court to grant relief under Rule 60(b)(3) based on the newly discovered email—the same one we discussed above—that she said showed Employer failed to disclose evidence that tended to show spoliation. The District Court denied the request. It found that Employee had not shown the alleged misconduct prevented her from fully presenting her case.[18]

The Court noted that, even if Employee had gotten the email during discovery, her litigation strategy would have been "fundamentally similar" to the strategy she adopted without the email. Had Employee known about the email, she might have asked Employer about it is his deposition. And she might have asked to inspect his computer system. She probably would have used the email to impeach Employer at trial. But Employee did question Employer about deleted emails, the Court noted, and she argued that the deleted emails would have helped prove that she worked overtime.

The District Court's finding of fact—that the alleged misconduct did not prevent Employee from fully presenting her case—is not clearly erroneous. *See Renteria-Marin*, 537 F.3d at 1324 (reviewing finding of fact for clear error). Employee argues that the District Court should have held an evidentiary hearing

---

[18] The District Court also found that Employee failed to show by clear and convincing evidence that Employer engaged in fraud or misconduct.

26

before ruling on the motion. But the Court's finding of fact is not clearly erroneous simply because it did not hold an evidentiary hearing, especially in light of the reasons the Court gave.

Thus, the District Court did not abuse its discretion by denying relief under Rule 60 based on the newly discovered email.

## C.

Employee argues that the District Court misapplied the burden-shifting framework set out in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88, 66 S. Ct. 1187, 1192 (1946), *superseded on other grounds by statute*, 29 U.S.C. § 254(a), *as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516–17 (2014). An employer covered by the Fair Labor Standards Act must keep records that show how many hours an employee worked in a workweek. *See* 29 C.F.R. § 516.2(a)(7). When an employer fails to keep accurate and adequate records, *Anderson* says that "an employee has carried out his burden *if he proves that he has in fact performed work for which he was improperly compensated* and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687, 66 S. Ct. at 1192 (emphasis added).

"The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the

reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88, 66 S. Ct. at 1192.

Employer admitted that he did not keep records. Rather than apply *Anderson*'s burden-shifting framework—indeed, the District Court never cited *Anderson*—Employee says the Court penalized her for Employer's failure to keep records. In turn, Employee argues, this error infected the Court's findings of fact.

We disagree. The District Court found that Employer's testimony was more credible than Employee's "because it better matche[d] the other evidence in the case, particularly the testimony of other employees." At the end of the trial, it was Employee's word against the word of four others—Employer, the bookkeeper, Employee's successor, and Employer's current paralegal. So, the District Court did not reject Employee's narrative because it misapplied *Anderson*'s standard, which is triggered only "if [the employee] proves that he has in fact performed work for which he was improperly compensated." *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192.

## D.

Finally, Employee argues that the District Court abused it discretion when it failed to *sua sponte* recuse. We set out the legal standard and then turn to Employee's argument.

1.

Any district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is an "affirmative, self-enforcing obligation." *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989). "The standard . . . is 'whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *Id.* at 744–45 (quoting *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989)).

Typically, "we review a judge's decision not to recuse him or herself for an abuse of discretion." *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004). But "because [Employee] failed to seek recusal of the district judge in the proceedings below, we review [her] recusal request for plain error." *Id.* This is a civil case, so we apply the "civil plain error rule." *See In re Lett*, 632 F.3d 1216, 1220 n.7, 1227 (11th Cir. 2011). Applying that rule here, we will review the issue only if Employee shows that a "miscarriage of justice will result from [our] refusal to" do so. *See id.* at 1220 n.7.

2.

Employee argues that the District Judge should have recused because Employer represented the District Judge's ex-wife during the couple's contested

29

divorce proceedings in 1990 and 1991.[19]  As part of those proceedings, Employee says, Employer deposed the District Judge twice.  Based on this, Employee argues that an objective, disinterested lay person would have significant doubt about the District Judge's impartiality.

We disagree.  Employer represented the District Judge's ex-wife roughly 26 years before this bench trial.  We do not think an objective, disinterested lay person would question the District Judge's partiality based on something so remote.  And even if an objective, disinterested lay person would question the District Judge's partiality, that person would expect the bias to benefit Employee.  Finally, there is nothing in this Court's § 455(a) precedent that would have alerted the Judge that he should recuse.  There will be no miscarriage of justice if we refuse to review this issue because the District Judge's failure to recuse is consistent with § 455(a).  *See Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982) ("Any wrong result resting on the erroneous application of legal principles is a miscarriage of justice in some degree.").  Thus, the civil plain error rule bars our review.

## III.

Our analysis is always driven by the standard of review.  Here, Employee was up against a deferential standard at every turn.  This case shows that

---

[19] The case is *Moody v. Moody*, No. 90-DR-014416 (Fla. Cir. Ct. filed June 29, 1990).

overcoming a deferential standard is an uphill battle.  The judgment of the District

Court is

**AFFIRMED.**