[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11557
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-24054-JEM

THE AFFILIATI NETWORK, INC.,

Plaintiff - Appellee,

MARSHALL SOCARRAS GRANT, P.L.,
Law Firm Plaintiff's counsel,

Plaintiff,

versus

COMMON SENSE BEAUTY, LLC,
TIMOTHY K. ISAAC,

Defendants - Appellants,

REINER & REINER, PA,
Law Firm Defendant's Counsel,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 5, 2020)

Before WILLIAM PRYOR, JILL PRYOR and MARCUS, Circuit Judges.

PER CURIAM:

Defendants-appellants Timothy K. Isaac and Common Sense Beauty, LLC (together, the "Defendants") appeal from the district court's order enforcing a settlement agreement between the Defendants and The Affiliati Network, Inc. ("Affiliati"), the plaintiff-appellee. On appeal, the Defendants argue that the district court erred in rejecting their due process argument and adopting the magistrate judge's Report and Recommendation, and in denying their motion to alter or amend the judgment. After a careful review, we affirm.

The relevant facts, for purposes of this appeal, are these. Affiliati is a web-based marketing company that receives commissions for generating sales for its clients. Common Sense Beauty sells beauty and dietary supplement products, and Isaac is the sole member of this limited liability company and is its CEO. In April 2017, the Defendants engaged Affiliati's services to promote the sale of their products online. In return, the Defendants agreed to pay Affiliati for these services.

The Defendants made their payments to Affiliati at first, but eventually, they fell behind, running up a $1,277,951 tab. On November 3, 2017, Affiliati brought suit to collect. However, not long after, Affiliati filed a motion seeking to enforce a settlement agreement it allegedly reached with the Defendants. Specifically, Affiliati claimed its counsel, Ruben Socarras, had negotiated the agreement with

2

Jeffrey Smith, Defendants' counsel, between December 12 and 14, 2017. It attached to its motion an email chain that purported to show the parties had agreed to settle this action for $1.1 million, payable in monthly installments of $60,000.

In relevant part, the email chain reads:

**Email 1: The Settlement Offer**

> **From:** Ruben Socarras
> **Sent:** Wednesday, December 13, 2017 12:50 PM
> **To:** Jeffrey L. Smith
> **Subject:** Affiliati v. Tim Isaac
>
> . . .
>
> 1. Option 1 -- $1,000,000 payable monthly beginning on Jan. 31, monthly thereafter until paid in full, which will include 12% interest. Payments will be no less than $125,000 per month; OR alternatively,
>
> 2. Option 2 -- $1,100,000, payable monthly beginning on Jan. 31, monthly thereafter until paid in full, which will include 12% interest. Payments will be no less than $75,000 per month.

**Email 2: Defendants' Counteroffer**

> **From:** Jeffrey L. Smith
> **Date:** Wednesday, December 13, 2017 at 2:59 PM
> **To:** Ruben Socarras
> **Subject:** Affiliati v. Tim Isaac
>
> Ruben,
> Thanks for the email. I discussed with my client and he authorized me to counter at $1,000,000 payable at $60,000 per month installments. He does not agree to pay interest. We can close the deal today if those figures are acceptable to your client.

Jeff

### Email 3: Affiliati's Counteroffer

On Dec. 13, 2017, at 2:02 PM, Ruben Socarras wrote:

Jeff,
I've been informed to tell you that the final offer is as follows:

1.1 million, 60,000 per month, no interest; or
1.0 million, 75,000 per month, no interest.

### Email 4: Defendants' Acceptance

**From:** Jeffrey L. Smith
**Date:** Thursday, December 14, 2017 at 10:46 AM
**To:** Ruben Socarras
**Subject:** Affiliati v. Tim Isaac

We have a deal on the $60,000 per month terms.  Pls send me the settlement agreement.

Jeff

For their part, the Defendants claimed Affiliati misrepresented the communications.  They argued that Smith had not accepted any offer from Affiliati. Instead, his final email agreeing to the "$60,000 per month terms" referred only to the terms in Defendants' counteroffer -- and not to Affiliati's final settlement offer.

To resolve this dispute, the district court referred Affiliati's motion to enforce to a magistrate judge.  On February 22, 2018, the magistrate judge held an evidentiary hearing to determine the best path forward.  At the hearing, the magistrate judge heard testimony from Socarras, Affiliati's counsel.  She also heard

4

from the defendant, Isaac. On May 11, 2018, the magistrate judge issued her Report and Recommendation advising the district court to grant Affiliati's motion to enforce. The district court agreed, issuing its orders adopting the Report and Recommendation and enforcing the settlement agreement on September 17. The Defendants timely appealed those orders, along with the court's order denying the Defendants' motion for reconsideration.

We review questions of constitutional law de novo. United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004). We review the district court's denial of Defendants' motion for reconsideration for abuse of discretion. See Jenkins v. Anton, 922 F.3d 1257, 1263-64 (11th Cir. 2019). Under that standard, "we affirm unless we determine that the district court applied an incorrect legal standard, failed to follow proper procedures in making the relevant legal determination, or made findings of fact that are clearly erroneous." Holland v. Sec'y, Fla. Dep't of Corr., 941 F.3d 1285, 1288 (11th Cir. 2019) (quotation omitted).

First, we are unpersuaded by the Defendants' claim that the district court erred in rejecting their due process argument and adopting the magistrate judge's Report and Recommendation. Essentially, they argue the magistrate judge violated their due process rights by cutting short their cross-examination of Affiliati's counsel, Socarras, during the evidentiary hearing. In support of their argument, Defendants rely on snippets of the evidentiary hearing transcript which purport to show that the

magistrate judge concluded Defendants' cross-examination before counsel had an opportunity to explore the reliability of Socarras's testimony.

It is clear that "where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, 397 U.S. 254, 269 (1970). A review of the full transcript amply establishes that the magistrate judge afforded the Defendants ample opportunity to do so. At the outset of the hearing, Affiliati introduced into evidence a series of emails documenting the settlement negotiations between itself and the Defendants. Notably, these emails were admitted without objection from the Defendants and "[p]ursuant to the parties' stipulation." Indeed, Defendants' counsel affirmed that "we have agreed with the exhibits." So Affiliati called Socarras, its counsel, to the stand to walk the court through the correspondence. At no point did the court permit Socarras to venture beyond a description of the emails' contents. The court also rejected Socarras's attempts to speculate as to Defendants' state of mind and admonished Socarras to avoid narrating from the witness stand.

The Defendants then had an opportunity to cross-examine Socarras. At first, this examination consisted of questions from counsel for the Defendants that probed the existence of a settlement agreement. Counsel also argued that Smith lacked authority to negotiate a settlement on behalf of the Defendants. But then the cross-examination changed course. The Defendants next sought to challenge the accuracy

of the email correspondence the court had already admitted into evidence. The Defendants also claimed that Affiliati had introduced the emails out of order so that the Defendants could argue that instead of accepting Affiliati's settlement offer, Smith had done no more than reiterate his own counteroffer.

The magistrate judge appropriately declined to countenance this line of questioning. For one, the emails had been admitted into evidence as true and accurate representations of the settlement negotiation between Affiliati and the Defendants. Even the Defendants themselves were not prepared to call any witness qualified to testify that these emails might not be authentic. Moreover, the magistrate judge ruled correctly that the Defendants' argument -- that the emails admitted into evidence did not properly reflect Smith's communications -- "could not be supported by anything other than Mr. Smith's testimony." On this basis, the magistrate judge permitted the cross-examination to proceed as to matters within the scope of Socarras's direct examination, and she gave the Defendants ten days to decide whether to supplement the record with testimony from Smith. In no respect did these actions contravene the Defendants' due process rights.

The magistrate judge also properly excluded a line of questioning from the Defendants as to whether Socarras was aware of certain allegations of impropriety against Affiliati, and whether he knew of a pending lawsuit between Montell Williams and the Defendants. As the magistrate judge aptly noted, those matters

7

were far afield from the topic of the evidentiary hearing, and it was well within the "wide latitude" given to the trial court for her to have limited cross-examination into matters that were "only marginally relevant." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

In short, the transcript of the evidentiary hearing reveals that the magistrate judge did not violate the Defendants' right to due process. Rather, the magistrate judge afforded the Defendants' ample opportunity for cross-examination and properly prevented the Defendants from inquiring only about topics outside the proper scope of the cross-examination. Notably, the magistrate judge even continued the hearing to permit a more fulsome exploration of those topics -- an opportunity the Defendants declined. Accordingly, the district court did not err in its orders adopting the magistrate judge's Report and Recommendation and granting Affiliati's motion to enforce the settlement agreement. Moreover, because we conclude that the district court did not err in its order adopting the Report and Recommendation, we also conclude that the district court did not abuse its discretion by denying Defendants' motion for reconsideration of that order.

**AFFIRMED.**