[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13169

Non-Argument Calendar

_____

MUBBRIKA S. BROWN,
ALQUDDUS BROWN,

Plaintiffs-Appellants,

*versus*

CARL MCMILLON,
JOHN RAINEY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

D.C. Docket No. 1:24-cv-00205-JB-C

————————————————

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Mubbrika Brown (Ms. Brown), a former Walmart employee, and her twin brother, Alquddus Brown (Mr. Brown), sued two Walmart executives over alleged wrongs that took place during Ms. Brown's employment. Before filing their *pro se* lawsuit, the Browns sent several notices to the executives in an attempt to resolve their disputes. Because the executives never responded to those notices, the Browns insist that the executives "defaulted" on an "administrative judgment" and owe over $14,000,000 in damages. According to the Browns, they are not litigating the merits of their claims because they already secured a default judgment. Instead, they brought the action solely to collect the damages. The district court dismissed the complaint after explaining that the Browns did not go through the proper process to secure a default judgment, and the Browns timely appealed. The Browns contend that dismissal was improper, that they should have been given instructions on how to cure the complaint, and that the district judge was biased against them.

After review, we affirm the district court's dismissal. The Browns did not support their claims with sufficient factual allegations. Because the Browns insist that this suit is a collection action and they were not litigating the merits of their claims, amendment

would be futile. And because the Browns did not seek recusal below and the underlying dismissal was proper, we decline to review the recusal matter on appeal according to the civil plain error rule.

## I.

Ms. Brown is a former Walmart employee. Her twin brother, Mr. Brown, has power of attorney over her estate. Together, the Browns brought twelve claims against two Walmart executives, CEO Carl McMillon and CFO John Rainey, for alleged offenses that occurred during Ms. Brown's employment.

According to the complaint and attached documents, Ms. Brown was "discriminated against and wrongfully terminated because of [her] medical conditions" and "retaliated against" for filing internal complaints and OSHA complaints. Additionally, "[d]ue to negligence, [she] suffered damages" from exposure to "carbon monoxide and other poisonous chemicals/gases." The Browns do not identify who was responsible for these alleged offenses. The Browns also allege that Ms. Brown's "civil rights as a disabled woman" under the Americans with Disabilities Act were violated "as a result of Walmart's malicious and egregious conduct."

In response to the alleged misconduct, Ms. Brown sent Walmart and the executives a "conditional acceptance" letter. In that letter, Ms. Brown asserted that if the recipients did not respond to the letter within ten days, then they would "agree" to pay $7,000,000 in damages and "a default judgment . . . by acquiescence of law" would be imposed. She also sent the executives a "notice of intent to lien" in which she notified them that she would secure

a lien against their property and financial interests if they did not respond within ten days.

Ms. Brown did not hear from the recipients, so she sent them a notice of default and opportunity to cure. Because Ms. Brown had still not received the $7,000,000 she claims she was entitled to, she sent Rainey a notice of demand of payment. In that notice, she asserted that he was "indebted" to her "in the amount of $7,000,000 . . . in compensatory damages" related to the "Administrative Judgment" for which he was "in Default." Ms. Brown also sent a "Waiver of Tort" in which she declared that an "implied contract" was created and that Walmart and the executives "agreed" to pay $7,000,000 in damages. Lastly, Ms. Brown sent an "International Commercial Complaint" to Walmart and the executives which stated that the Browns were "libellants" and Walmart and the executives were "libellees." The complaint included documents asserting the existence of a default judgment lien. As a consequence of the executives' silence, the Browns allege that there is a "contractual agreement by acquiescence to pay for damages in the amount of $14,300,000."

After sending these notices and forms, the Browns brought the present action in state court, which the executives removed to federal court. The complaint listed twelve counts, numbered one through six and eight through thirteen.

In Count One, Ms. Brown alleged that Human Resources and Management at Walmart "retaliated" against her because she complained of "misconduct and safety hazards," and they "coerced

[her] into taking time off" that she had not accumulated. In Count Two, she alleged harassment and a hostile work environment on the basis that Human Resources and Management at Walmart "tried to provoke [her] into confrontations to make [her] seem uncooperative and unstable while on duty." In Count Three, she alleged that Walmart violated her civil rights by "refusing to help accommodate [her] special needs" and "taking advantage" of her, in violation of the ADA. In Count Four, she alleged that Walmart violated the Toxic Substances Control Act by exposing her and other employees to carbon monoxide and other gases and chemicals. In Count Five, she alleged that Walmart partook in fraudulent misrepresentation by deceiving her into believing that they "protect[ed] their employees against misconduct, provid[ed] a safe working environment, and respect[ed] human rights." In Count Six, she alleged that Walmart made "fraudulent claims pertaining to [her] termination to avoid commercial liability." In Count Eight, she alleged that Walmart conspired to strip her of her title, bonuses, raises, and retirement. In Count Nine, she alleged that Walmart "wrongfully terminated" her because of her "complaints about management misconduct." In Count Ten, she alleged that Walmart's management "damaged her reputation" and "prevented her from being hire[d] at Walmart stores." In Count Eleven, she alleged Walmart discriminated against her by "pretending to help resolve issues" surrounding her disability and medical problems and that she was "overlooked after applying for an open position." In Count Twelve, she asserted that she suffered various economic damages due to Walmart's "egregious and malicious

conduct." And finally, in Count Thirteen, she asserted that Walmart was liable for punitive damages because of its "injurious conduct, evil motives/intent, [and] recklessness towards her and other employees' federal rights."

The executives moved to dismiss on several grounds. Most relevant to this appeal, they argued that the claims were brought under statutes that did not include a private right of action or provide for individual liability, were insufficiently pleaded, and failed to state plausible claims.

The Browns responded by arguing that the executives "acquiesced" to their "administrative Process," "agreed by declaration of waiver of tort to settle the tort action," and "waiv[ed] . . . all rights." They also argued that nothing from the face of the complaint would disprove their entitlement to relief and that the complaint adequately "delineate[d] the requisite elements of all counts." In any event, they insist that the executives acknowledged liability for all counts by "admission, confession, dishonor by silence, and default." Furthermore, they attached a UCC Financing Statement to the response. That statement listed the executives as debtors and Ms. Brown as the secured party, and it noted that the executives "agree" that Ms. Brown "hold[s] a right of lien and levy" against their assets worth $49,000,000. The statement was marked as received by the Alabama Secretary of State.

The district court then held a hearing. At the hearing, Mr. Brown explained that he and Ms. Brown "already did a[n] [administrative] process," the executives "defaulted" on that process by

failing to respond, and as a result, the Browns secured "a commercial lien . . . filed with the Secretary of State." Consequently, Mr. Brown insisted that the Browns "already adjudicated the damages" and that this suit was "pretty much to collect" those damages. He reiterated this point, insisting that the Browns "already have a judgement, so [they] didn't come here for the judgment. [They] came here for the collections[.]"

The court explained to Mr. Brown that the process he described was "not how it works." Specifically, the court told him that he cannot "enter [his] own judgment and then record a lien." Otherwise, the "lien" is "just a piece of paper" unsupported by "the process and the law." Ultimately, the court granted the executives' motion to dismiss.

The Browns timely appealed.

## II.

"We review *de novo* the grant of a motion to dismiss for failure to state a claim." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). To successfully state a claim, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although we accept the plaintiff's allegations as true, mere legal conclusions "are not entitled to the assumption of truth." *Id.* at 679. A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and

is liberally construed, but it "must still suggest that there is at least some factual support for a claim." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). And even under the lenient *pro se* standard, we will not "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)

The district court must give a *pro se* plaintiff "at least one chance to amend the complaint before the district court dismisses the action with prejudice" if a "more carefully drafted complaint might state a claim." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (citation omitted). But the plaintiff is not entitled to this opportunity if "the district court has a clear indication that the plaintiff does not want to amend his complaint" or "a more carefully drafted complaint could not state a claim." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (citation omitted).

Lastly, we may affirm for any reason supported by the record, even if the district court did not rely on that reason. *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1294 (11th Cir. 2016).

## III.

On appeal, the Browns present three issues. First, they contend that the district court improperly dismissed the complaint. Because dismissal was supposedly improper, the Browns also seek imposition of sanctions on opposing counsel "for their attempt to impair obligations of contract, failing to notify the court, and taking up the court[']s valuable time and . . . resources." Next, they argue

that even if the complaint was defective, the district court had a duty to tell them how to cure the deficiencies and allow them to amend. Last, they suggest that the district court was biased against them by prejudging the merits and dismissing the complaint before discovery in violation of their due process and equal protection rights. Each of these arguments fails.

*A.*

Each count fails to state a claim, either because the relevant statutes do not enable the Browns to sue the executives or because the counts were not adequately supported by factual allegations. Therefore, the district court properly dismissed the complaint.

On Counts One, Two, Three, Nine, and Eleven, the Browns alleged retaliation, coercion, harassment, hostile work environment, ADA violations, wrongful termination, and discrimination. Although the Browns do not specifically identify a cause of action or a statutory violation for most of these claims, construed liberally, it appears that they brought these claims under the ADA, Title VII, or OSHA. *See* 42 U.S.C. §§ 12112(a), 2000e-2(a); 29 U.S.C. *et seq.* But the ADA and Title VII provide for relief against employers, not individual employees. *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007). And OSHA does not include a private right of action. *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 977 (5th Cir. 1975). Because the Browns sued two Walmart executives individually instead of Walmart itself, these claims fail if brought under the ADA or Title VII. And if the Browns sued under OSHA, the claim would fail regardless of whom the Browns sued.

Count Four alleged violations of the Toxic Substances Control Act. *See* 15 U.S.C. *et seq*. The Browns do not make any allegations regarding the executives' conduct. Instead, they make conclusory allegations that Ms. Brown was "expos[ed]" to "deadly gases/chemicals," which is insufficient to support a claim.

Counts Five, Six, and Eight bring fraud claims and a conspiracy to defraud claim. Because we have diversity jurisdiction over the matter, Alabama substantive law controls our analysis. *Bank of Brewton v. Travelers Cos., Inc.,* 777 F.3d 1339, 1342 (11th Cir. 2015). Under Alabama law, the necessary elements of fraud are "1) a false representation of 2) a material fact, 3) which was relied upon by the plaintiff, 4) who was damaged 5) as a result of his reliance." *Standard Furniture Mfg. Co. v. Reed*, 572 So. 2d 389, 391 (Ala. 1990); *see* Ala. Code. § 6-5-101. The Browns do not allege that the executives made any false representations to Ms. Brown, let alone that Ms. Brown relied on such a representation to her detriment. Nor do they allege any facts suggesting that the executives entered a conspiracy beyond the conclusory statement that they "teamed up." Due to this deficiency, the Browns fail to state a claim under these counts.

Count Ten alleges defamation. To establish a prima facie case of defamation under Alabama law, a plaintiff must show that "[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof

of special harm (actionable per quod)." *Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (quotation marks omitted). But the Browns never allege that the executives made false statements about Ms. Brown to anyone.

Counts Twelve and Thirteen simply assert that Ms. Brown is entitled to economic and punitive damages. They do not allege any claims at all.

Because the Browns did not allege facts sufficient to support any of these claims, the district court properly dismissed them. And because the only basis for the Browns' motion for sanctions was opposing counsel's meritorious motion to dismiss, sanctions are not proper.

### B.

Even though the Browns failed to state a claim, they argue that the district court should have told them how to cure the complaint and granted an opportunity to amend. Although *pro se* plaintiffs are typically entitled to this benefit, the opportunity to amend is not unconditional. *Woldeab*, 885 F.3d at 1291. In this case, amendment would have been futile, so the Browns were not entitled to an opportunity to amend.

At the motions hearing, the Browns made clear that they did not want to litigate over the defendants' alleged misconduct. On several different occasions, the Browns expressed that they had already gone through an "administrative process" and that the executives had defaulted in that process, entitling them to damages.

12                    Opinion of the Court                    24-13169

When asked directly, the Browns insisted that they had "already adjudicated the damages," they "already have a judgement," they "didn't come here for the judgment," and they filed the present suit "to collect on the judgment." The district court tried to explain that the Browns misunderstood the process, but the Browns were adamant that they had a "commercial lien" from which they could collect the supposed damages. Based on the Browns' own representations, it is not clear how any amendment could cure their complaint.

## C.

For the Browns' final argument, they declare a state of "Mixed War" against the district court and argue that the district judge should have recused. Specifically, the Browns contend that the district court showed bias against them and "acted in a conspiracy" to favor the executives and violate the Browns' equal protection and due process rights. But the Browns never sought recusal below. When a plaintiff does not seek recusal, we review the decision not to recuse for plain error. *Jenkins v. Anton*, 922 F.3d 1257, 1272 (11th Cir. 2019). Although the Browns refer to their complaint as a "criminal complaint" and invoke the Federal Rules of Criminal Procedure, this case is a civil action. And in a civil action, we apply the "civil plain error rule." *Id.* Under that rule, we do not review a contested matter unless our failure to do so would result in "a miscarriage of justice." *In re Lett*, 632 F.3d 1216, 1220 n.7 (11th Cir. 2011). Because the dismissal was proper and amendment would be

24-13169                 Opinion of the Court                 13

futile, no miscarriage of justice would result from our refusal to consider the recusal issue on appeal. Therefore, we decline do so.

**IV.**

We **AFFIRM**.